J-S07019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEREMIAH DANIEL WHITE, | |
| Appellant | No. 662 MDA 2014 |

Appeal from the Judgment of Sentence of  January 29, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003627-2013

BEFORE:  BENDER, P.J.E., OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 27, 2015**

Appellant, Jeremiah Daniel White, appeals from the judgment of sentence entered on January 29, 2014, as made final by the denial of Appellant's post-sentence motion on March 18, 2014.  On this direct appeal, Appellant's court-appointed counsel has filed both a petition to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[1]  We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is

_____

[1] **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

wholly frivolous. We, therefore, grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

On May 6, 2013, Appellant was arrested and charged with "driving under the influence – general impairment" (hereinafter "DUI" or "DUI – General Impairment"), "resisting arrest or other law enforcement," and "failure to stop at a steady red signal."[2] On December 11, 2013, Appellant proceeded to a bifurcated trial on the charges, with the jury sitting as the fact-finder on the resisting arrest or other law enforcement charge and the trial court sitting as the fact-finder on the DUI and failure to stop at a steady red signal charges.

During Appellant's trial, Pennsylvania State Police Corporal Alan Tres testified on behalf of the Commonwealth. As Corporal Tres testified, in the early-morning hours of May 6, 2013, he was on-duty, in full uniform, and driving an unmarked patrol car in the City of York, with Pennsylvania State Trooper Jonathan Burnham. N.T. Trial, 12/11/13, at 36-37. Corporal Tres testified that, at approximately 1:00 a.m., he was driving east on Mount Rose Avenue and was approaching the intersection at South Albermarle Street, when he noticed a silver Lincoln Navigator make an illegal left-hand turn on a steady red stoplight. *Id.* at 38. Corporal Tres testified that he followed the vehicle, activated his emergency lights, and conducted a traffic

---

[2] 75 Pa.C.S.A. § 3802(a)(1), 18 Pa.C.S.A. § 5104, and 75 Pa.C.S.A. § 3112(a)(3)(i), respectively.

- 2 -

stop on the vehicle. *Id.* As is pertinent to the resisting arrest or other law enforcement charge, Corporal Tres testified:

> After we stopped the vehicle, I exited the driver side of the patrol car and approached the driver side of the Navigator. Trooper Burnham walked on the passenger side. As I approached the vehicle, I noticed the driver window down probably six or seven inches. As I approached, I noticed that [Appellant] was the driver of the vehicle and the only occupant.
>
> As I approached the vehicle, I said, I told him who I was and asked to see his documentation for the vehicle. Can I see your license, registration, and insurance card[?] He immediately seemed agitated and barked back at me, [saying] why did you stop me? [I said, s]ir, let me see the information. [He said,] I am requesting an explain to you, why I am being stopped by you [sic]. [He said] I am not showing you anything until you tell me why you stopped me. I explained, we typically ask for that to identify the person and make sure that they are legally allowed to be in the vehicle. That's part of our job is to identify who we are dealing with. He basically wanted to argue why you stopped me. Why did you stop me?
>
> I think at one point, I think, I did say, you ran the red light. He said, no, I didn't.
>
> As I spoke to him, I noticed other indicators that other things [were] going on. I requested that he step from the vehicle. He refused to get out of the vehicle. At that point I tried to open the door and the door was locked. [I said, s]ir, you get out of the vehicle. [He said] I am not getting out of the car.
>
> I started to reach through the window to unlock the door – as I reached through the window, he then began to roll the window up. At that point I had to pull[] my arm back out of the window. He pulled the window completely up. I then explained to him that if he didn't get out of the car, I was going to break the window and he was going to be removed from the car. He still refused to get out of the car.

I warned him, again. I said, I am going to give you one more warning after this. If you don't get out of the car, I am going to break the window. He still refused to get out of the car. He said, I am not getting out.

I said, I am going to count to three. At the count of three, I am going to break your window. As this was going on, Trooper Burnham heard what was happening and he came around and was actually standing next to me at this point. . . . [Appellant] said, break it. Then I said, one, two, three and at the count of three I used my ASP baton to break the window.

After the window was broken, I reached in and opened the door and began to try [to] pull [Appellant] out of the vehicle. He began to resist. He wouldn't get out of the vehicle. He pinned himself inside the vehicle and it took both Trooper Burnham and [me] to pull him out of the vehicle.

Once we got him out of the vehicle, we kept ordering him to the ground. He continued to refuse and continued to resist. At that point it took both of us pulling on him to get him to the ground and try to gain control of him.

Once we got him to the ground, we continued to order him to put his hands behind his back and stop resisting. He refused to do that. He was warned if you don't put your hands behind your back, you are going to be [Tased]. He still continued to resist putting his hands behind his back. At that point, Trooper Burnham did what we call a dry stun. He removed the [cartridge so that it would not] shoot the projectiles. It gives a shock like a stun gun type thing. At that point Trooper Burnham activated his [Taser] on the back of [Appellant's] neck. [From] that point on[, Appellant] was compliant.

*Id.* at 39-43 (some internal paragraphing omitted).

Further, Corporal Tres testified that Appellant's actions required the corporal: to stand on the road in the lane of travel; to "take[ Appellant] to

- 4 -

the ground in the lane of travel;" and, to subdue Appellant in the lane of travel. *Id.* at 44.

With respect to the DUI charge, Corporal Tres testified that, as soon as he began speaking with Appellant, the corporal was able to "detect the odor of alcoholic beverage emitting from inside the vehicle, [and the corporal was able to discern that Appellant's] speech was slurred, and [that Appellant had] glassy," "bloodshot" eyes. *Id.* at 60 and 83. Corporal Tres also noticed that an empty Patron tequila bottle was lying "[i]n the middle of the seat directly behind where [Appellant] was sitting" and within Appellant's arm's reach. *Id.* at 83. Further, as Corporal Tres testified, Appellant admitted "several times" to having drunken alcohol prior to the vehicle stop, but Appellant protested that doing so "was not a crime." *Id.* at 84.

As Corporal Tres testified, after he was finally able to detain Appellant, Appellant still acted in a "belligerent, ranting, [and] argumentative" manner. *Id.* Corporal Tres testified that, because of Appellant's unruly behavior, the corporal was unable to perform field sobriety tests on Appellant. *Id.* at 83-84. Instead, the corporal testified, he drove Appellant to the hospital, with the hope that Appellant would submit to a chemical test of his blood. *Id.*

Corporal Tres testified that, while they were sitting in the patrol car, in front of the hospital, the corporal read Appellant the implied consent and

**O'Connell**[3] warnings and then requested that Appellant submit to chemical testing of the blood, for the purpose of determining Appellant's blood alcohol content. **Id.** Corporal Tres testified that Appellant appeared to understand the implied consent and **O'Connell** warnings; however, Appellant told Corporal Tres that he did not understand the warnings and Appellant refused to submit to chemical testing. **Id.** at 85-87. As a result of Appellant's refusal, Corporal Tres did not take Appellant into the hospital; instead, the corporal drove Appellant to the Pennsylvania State Police barracks for booking. **Id.** at 85-86.

Appellant testified in his own defense at trial and claimed that: he did not make an illegal left-hand turn on a red light, but, rather, waited until the light turned green before he turned; as soon as he pulled his vehicle over to the side of the road, Corporal Tres "came right up to the car[ and] started tugging on the door automatically before there was any license or registration" request; Corporal Tres refused to tell him the reason for the vehicle stop; while he was still attempting to communicate with Corporal Tres, Corporal Tres simply broke his car window with a police baton and pulled him from the car; and, when he was outside of the car, he attempted to cooperate with the police commands, but the police "hurled [him] in the air[,] slammed [him] on the ground," and Tased him in the neck. **Id.** at 49-

_____

[3] **See Comm., Dep't of Transp. v. O'Connell**, 555 A.2d 873 (Pa. 1989).

54. Further, Appellant testified that he did not drink alcohol on the night in question and he did not recall that he ever refused Corporal Tres' request to submit to blood alcohol testing. *Id.* at 90-91.

At the conclusion of Appellant's trial, the jury found Appellant guilty of resisting arrest or other law enforcement and the trial court found Appellant guilty of DUI and failure to stop at a steady red signal. On January 29, 2014, the trial court sentenced Appellant to serve a term of 72 hours to six months in jail for the DUI conviction and to serve a concurrent term of 30 days to 18 months in jail for the resisting arrest or other law enforcement conviction. N.T. Sentencing, 1/29/14, at 3.

Appellant filed a timely post-sentence motion, where Appellant claimed that his verdicts were against the weight of the evidence. Appellant's Post-Sentence Motion, 2/7/14, at 1. The trial court denied this post-sentence motion on March 18, 2014, after which Appellant filed a timely notice of appeal.

On appeal, Appellant's court-appointed counsel has filed a petition for leave to withdraw and has accompanied this petition with an *Anders* brief. Within the *Anders* brief, Appellant raises the following claims:[4]

---

[4] The trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In accordance with Pa.R.A.P. 1925(c)(4), Appellant's court-appointed counsel filed a "statement of intent to file an *Anders*/*McClendon* brief in lieu of filing a [Pa.R.A.P. 1925(b) s]tatement." Pa.R.A.P. 1925(c)(4).

[1.] Whether there was sufficient evidence to convict Appellant of DUI – General Impairment and resisting arrest?

[2.] Whether the verdicts were against the weight of the evidence?

Appellant's Brief at 5.

Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Finally, counsel must furnish a copy of the *Anders* brief to his client and advise the client "of [the client's] right to retain new counsel, proceed

- 8 -

*pro se* or raise any additional points worthy of this Court's attention." **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5, *quoting* **McClendon**, 434 A.2d at 1187. It is only when both the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel has met all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the issues raised in the **Anders** brief.

Appellant first claims that the evidence was insufficient to support his convictions for DUI and resisting arrest or other law enforcement. We will discuss Appellant's sufficiency of the evidence claims in the order raised above; however, the claims are frivolous.

We review Appellant's sufficiency of the evidence claims under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence

- 9 -

and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Brown**, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* **Commonwealth v. Hutchinson**, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Initially, Appellant claims that the evidence was insufficient to support his DUI conviction. Here, Appellant was convicted of DUI – General Impairment, pursuant to 75 Pa.C.S.A. § 3802(a)(1). This section provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

As our Supreme Court has explained, "subsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was

- 10 -

rendered incapable of safely doing so due to the consumption of alcohol." ***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Amongst the types of evidence that are relevant in determining whether an individual has violated subsection 3802(a)(1) include the following: "the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary." ***Id.***

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was clearly sufficient to support Appellant's DUI conviction. Certainly, the evidence demonstrates that: Appellant committed a flagrant moving violation of the Pennsylvania Vehicle Code; immediately upon speaking with Appellant, Corporal Tres was able to "detect the odor of alcoholic beverage emitting from inside the vehicle, [and the corporal was able to discern that Appellant's] speech was slurred, and [that Appellant had] glassy," "bloodshot" eyes; there was an empty Patron tequila bottle that was lying "[i]n the middle of the seat directly behind where [Appellant] was sitting" and within Appellant's arm's reach; Appellant told Corporal Tres that he had consumed alcohol on the night in question, but contended that drinking "was not a crime;" Appellant was uncooperative with the police throughout the entire encounter; Appellant would not exit the

vehicle when he was (repeatedly) ordered to do so; Corporal Tres was required to break Appellant's window and drag Appellant out of the car; even after he was detained, Appellant continued to act in a "belligerent, ranting, [and] argumentative" manner; and, Appellant refused to submit to a chemical test of his blood, even though Appellant understood the implied consent and **O'Connell** warnings, thus demonstrating a consciousness of guilt.

The above evidence is plainly sufficient to prove that Appellant drove a vehicle "during the time when he [] was rendered incapable of safely doing so due to the consumption of alcohol." **Segida**, 985 A.2d at 879. Appellant's claim to the contrary is frivolous.

Next, Appellant claims that the evidence was insufficient to prove that he committed the crime of resisting arrest or other law enforcement. Again, the claim is frivolous.

Resisting arrest or other law enforcement is defined in the following manner:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

As this Court has explained, "[t]he provisions of 18 Pa.C.S.A. § 5104 are clearly disjunctive." **Commonwealth v. Karl**, 476 A.2d 908, 911 (Pa.

Super. 1984). "To be convicted under the first provision of § 5104," we have held, "it is essential that there be a lawful arrest." *Id.* However, section 5104 also provides that an individual may be convicted of resisting arrest or other law enforcement where the individual prevents a public servant from "discharging any other duty." *Id.* Noting that 18 Pa.C.S.A. § 5104 was modeled after Section 242.2 of the Model Penal Code, this Court has quoted from the comments to Model Penal Code § 242.2 and has held that the crime of resisting arrest or other law enforcement:

> covers physical interference in a host of circumstances in which public servants discharge legal duties other than arrest. These include, for example, a policeman executing a search warrant, a fireman putting out a blaze, a forest or agricultural official making required inspections, an election official charged with monitoring balloting, and the like.

*Karl*, 476 A.2d at 911 (emphasis omitted), *quoting* MPC § 242.2 cmt. 5.

In the case at bar, Corporal Tres effectuated a traffic stop of Appellant's vehicle after he witnessed Appellant commit a moving violation of the Motor Vehicle Code. Thus, when Corporal Tres requested that Appellant produce his license, registration, and insurance and when Corporal Tres requested that Appellant step out of the vehicle, Corporal Tres possessed probable cause to believe that Appellant had violated the Vehicle Code – and Corporal Tres was clearly "discharging [his] duty" of issuing a citation to Appellant. *See* 18 Pa.C.S.A. § 5104.

Here, the evidence demonstrates that Appellant refused to comply with Corporal Tres' repeated orders to produce a license, registration, and

insurance and to step out of the vehicle, following the legal and valid traffic stop. Further, the evidence demonstrates that Appellant's active resistance required the officers to use "substantial force to overcome." Certainly, the evidence demonstrates that: Appellant rolled his window up on Corporal Tres' outstretched arm; Appellant locked and shut his vehicle, thus requiring that Corporal Tres use his baton to break Appellant's car window; even after the window was broken, Appellant refused to leave the vehicle and instead "pinned" himself in his vehicle, thus requiring Corporal Tres and Trooper Burnham to forcibly pull Appellant out of the vehicle; once outside the vehicle, Appellant continued to resist Corporal Tres and Appellant would not go the ground or put his arms behind his back, as he was ordered; and, Appellant's resistance required Trooper Burnham to "dry stun" Appellant in the back of his neck with a Taser, to force compliance.

The above facts demonstrate that Appellant acted with the "intent of preventing a public servant from . . . discharging [his] duty [of issuing a motor vehicle citation and did so by] . . . employ[ing] means justifying or requiring substantial force to overcome the resistance." **See** 18 Pa.C.S.A. § 5104; **see also Commonwealth v. Thompson**, 922 A.2d 926, 928 (Pa. Super. 2007) (evidence was sufficient to support the defendant's resisting arrest conviction where the defendant "interlocked her arms and legs" around her husband, thus requiring that the officer use "substantial force to overcome the resistance"); **Commonwealth v. McDonald**, 17 A.3d 1282,

- 14 -

1285-1286 (Pa. Super. 2011) (holding that there was sufficient evidence to show that the police were required to use substantial force to arrest [a]ppellant because: "[u]pon realizing he had been observed delivering cocaine, [a]ppellant fled the scene on foot and led officers on a chase through traffic for several blocks[; a]fter police caught up with [a]ppellant when he slipped on wet grass, multiple officers were needed to hold [a]ppellant down on the ground[; a]s [a]ppellant continued to try to get up, officers were concerned that he had a weapon and struggled to force his hands behind his back[; e]ven after officers threatened to taser [a]ppellant, he still refused to submit to their authority[; a]ppellant ultimately complied after police used a taser to effectuate the arrest").

The evidence is thus sufficient to support Appellant's conviction for resisting arrest or other law enforcement. Appellant's sufficiency of the evidence claim is frivolous.[5]

On appeal, Appellant also claims that the verdicts were against the weight of the evidence. Our Supreme Court has held:

> a verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial

---

[5] Within the argument section of Appellant's brief, Appellant also claims that the evidence was insufficient to support his conviction for "failure to stop at a steady red signal." **See** Appellant's Brief at 15-16. This claim is frivolous, as Corporal Tres testified that he witnessed Appellant make an illegal left-hand turn on a steady red signal. N.T. Trial, 12/11/13, at 38.

court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Serrano***, 61 A.3d 279, 290 (Pa. Super. 2013) (internal quotations and citations omitted).

Appellant has not provided this Court with a discrete argument as to why the verdicts are against the weight of the evidence or as to how the trial

court abused its discretion when it denied Appellant's post-sentence weight of the evidence claim. To the extent that Appellant bases his current claim upon the contention that the respective fact-finders should have believed his version of the events and should have disbelieved Corporal Tres' version of the events, the claim is frivolous. *See*, *e.g.*, *Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012) ("the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses") (internal quotations, citations, and corrections omitted); *Commonwealth v. Kearns*, 70 A.3d 881, 884 (Pa. Super. 2013) ("[w]here issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court").

We have independently considered the issues raised within Appellant's brief and have determined that they are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw appearance.

Petition to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2015